UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THE NAVAJO NATION,

            Plaintiff,

      v.

ALEX M. AZAR II,

            Defendant.

Civil Action No. 18-0253 DLF

REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

      In its Opposition, Plaintiff concedes that it can only seek relief under the Administrative Procedure Act ("APA"), and so Count One of its complaint seeking relief under the Head Start Act should be dismissed, and that it is not challenging the procedural process of HHS's rulemaking, so the allegation that HHS acted "without observance of procedure required by law" is improperly pled and should be dismissed.  What remains is a recitation of its old arguments regarding its purported plain language reading of the Head Start Act, which seems only to be bulked up by misconstruing legislative history.  As argued in support of Defendant's Motion to Dismiss and its Opposition to Plaintiff's Motion for Summary Judgment, a proper analysis of the statutory language at issue here shows that the use of the term reduce is not unambiguous and that HHS's interpretation is reasonable.

    A. Plaintiff only has an APA claim.

      Plaintiff concedes that the Complaint's Count One, which is pled as a cause of action under the Head Start Act, is actually just a claim under the APA. Pl. Opp. at 3.  Therefore, Count

One is not alleging anything different from Count Two, which is styled as an actual APA claim, so it can simply be dismissed.

   B.   Rulemaking process not at issue.

      Plaintiff concedes, "The Navajo Nation does not challenge the rulemaking process that HHS followed" and "the flaw in the rulemaking process is not procedural but substantive." Pl. Opp. at 3.  That position is fine on its face, but that is not what 5 U.S.C. § 706(2)(D), which allows agency actions to be set aside for acting "without observance of procedure required by law," is about.  That provision of the APA is purely concerned with procedural flaws. *See, e.g.*, *Arizona v. Thompson*, 281 F.3d 248, 254 n.9 (D.C. Cir. 2002) (noting that "without the observance of procedure required by law" refers to the "notice-and-comment procedure of 5 U.S.C. § 553); *Natural Resources Defense Council, Inc. v. Securities and Exchange Comm'n*, 606 F.2d 1031, 1048 (D.C. Cir. 1979) (explaining its review under 5 U.S.C. § 706(2)(D) is a "review of an agency's procedural compliance"); *Nat'l Ass'n of Mfrs. v. U.S. Dep't of Labor*, No. 95-0715, 1996 WL 420868, at *12 (D.D.C. 1996) (stating analysis under 5 U.S.C. § 706(2)(D) concerns "whether defendant gave adequate notice and opportunity to comment"); *Kirk v. White*, 627 F. Supp. 423, 425 (E.D. Va. 1986) (clarifying notwithstanding the availability of substantive review a court retains the power to review allegations that an agency has violated its own procedural regulations under 5 U.S.C. § 706(2)(D)).  It seems in this argument Plaintiff continues to be plagued, as it has throughout this litigation, by Plaintiff's failure to grasp that plain language cannot be understood without proper context. HHS will not delve further into a statutory interpretation of the APA because that seems unnecessary in light of the previous briefing.  Instead, Defendant will note that if Plaintiff is not challenging a procedural flaw in the

rulemaking, then that aspect of Count Two claiming HHS acted "without observance of procedure required by law" can be dismissed.

C. <u>The legislative history does not say what Plaintiff says it does.</u>

Plaintiff's Opposition first attempts to use the legislative history of the Improving Head Start for School Readiness Act of 2007 ("2007 Reauthorization") to bolster its arguments. But Plaintiff's reading of the legislative history is mistaken.  Indeed, the legislative history cuts against Plaintiff's assertions.  Legislative history can be an important component of statutory interpretation.  Here, Plaintiff highlights the changed language and in its Motion for Summary Judgment it includes a reference to the Senate Report that considered the amendment.  Plaintiff states, "Notably, this amendment *enhanced* the appeal rights that must be afforded to grantees." Pl. Opp. at 5 (emphasis added).  Plaintiff is mistaken.  The House Report gives a better understanding of why 42 U.S.C. § 9841(a)(3) was amended.  It explains, "The Improving Head Start Act of 2007 strengthens federal authority to initiate grantee termination proceedings" and "[the Committee was] concerned that some [appellate] reviews have been reported to continue several years." H.R. Rep. No. 110-67, at 63 (2007).  When a Head Start grantee pursues an administrative appeal of a termination, it is allowed to continue running the program and receiving the Head Start grant. 45 C.F.R. § 1304.5(c)(2).  The House Committee was alarmed that these appeals were dragging out, and noted that "seven months or several years is too long for children to endure programs with demonstrated deficiencies." H.R. Rep. No. 110-67, at 63 (2007).  The time periods added to 42 U.S.C. § 9841(a)(3) were a *limitation* on grantees' appeal rights not an *enhancement*.  That objective squares with the general motivation behind the 2007 Reauthorization to "improve program quality" of and "expand access" to the Head Start program. H.R. Rep. No. 110-439, at 1 (2007) (Conf. Rep.).

Although the legislative history does not stand for what Plaintiff suggests, it does show Congress considering whether the cut off for chronic enrollment designation should be 95 percent or 97 percent, weighing the appropriate time periods for calculation, and generally crafting the strict scheme that HHS is meant to follow and has followed under the chronic underenrollment process. *See* H.R. Rep. No. 110-439, at 127-28 (2007) (Conf. Rep.); S. Rep. No. 110-49, at 36 (2007).  That highly prescribed scheme allowed for Secretarial discretion but not an appeal.  Equally telling, the amendments to 42 U.S.C. § 9841(a)(3), the purpose of which Plaintiff misconstrues, did not include a reference to the newly created underenrollment procedure and its withhold, recapture, and reduce step, even though Congress was amending that section, as Plaintiff points out, and could have easily added in such a reference.

> D. Once again Plaintiff fails to demonstrate that the provisions in 42 U.S.C. § 9836a(h) and 42 U.S.C. § 9841(a)(3) have been misinterpreted by the Agency.

Defendant's Motion to Dismiss and Opposition explain in great detail why 42 U.S.C. § 9841(a)(3) and 42 U.S.C. § 9836a(h) are ambiguous (or, rather, not unambiguous), while Plaintiff's Opposition struggles to support its contention that the statute is unambiguous with several arguments.  None are persuasive.  Plaintiff again offers its paragraph of case law quotations with little analysis, which the Government dealt with in detail in its Opposition to Plaintiff's Motion for Summary Judgment. Def. Opp. at 2-5.  Plaintiff's argument appears to be that the Head Start Act is unambiguous because Plaintiff says it is.  Yet case law in this Circuit does not support that contention.  The D.C. Circuit has considered provisions of 42 U.S.C. § 9841(a)(3) before.  In *Salt Lake Community Action Program v. Shalala*, it noted that the term "termination" was ambiguous and so deference to HHS' reasonable construction was due. 11 F.3d 1084, 1089 (D.C. Cir. 1993) ("[W]e find an implicit delegation from Congress to HHS to interpret 'termination' under 42 U.S.C. § 9841(a)(3).").  If the much clearer term of

"termination" is ambiguous, then the more general and undefined term "reduce" is surely ambiguous and open to agency interpretation.

Plaintiff spends significant energy taking offense to the comparison of this case and *Ohio Head Start Association, Inc. v. U.S. Department of Health and Human Services*, 873 F.Supp.2d 335 (D.D.C. 2012) *aff'd*, 510 Fed. Appx. 1, 2013 WL 2393046 (D.C. Cir. May 21, 2013) (per curiam).  Plaintiff asserts the decision in *Ohio Head Start Association* is inapposite, but that is an overstatement.  As the Government argued in support of its Motion to Dismiss, the two situations are similar.  Just like here, the *Ohio Head Start Association* plaintiffs argued that HHS' notice and comment rulemaking were invalid because the Head Start Act was unambiguous.  Just as Plaintiff has done here, the *Ohio Head Start Association* plaintiffs argued that they did not receive the process due to them.  Both actually use the term "short circuit" to describe what they accuse HHS of doing regarding process and appeals. Pl. Opp. at 11; Amended Complaint at ¶ 38 in *Ohio Head Start Ass'n, Inc. v. U.S. Dep't of Health and Human Servs.*, No. 12-00309 (D.D.C. Mar. 23, 2012) (alleging HHS regulations sought to short circuit the existing system governing terminations including an opportunity to appeal, a reference to the termination appeal in 42 U.S.C. § 9841(a)(3)).  And just as here, their argument failed because HHS' interpretation of the Head Start Act was reasonable.  Both sets of plaintiffs' APA claims cannot and should not be accepted in the face of agency deference.

Plaintiff's Opposition also contends that HHS has not explained why it is reasonable to view the actions described in 42 U.S.C. § 9836a(h) and in 42 U.S.C. § 9841 as distinct.  But HHS has previously highlighted the differences between the adverse actions described in 42 U.S.C. § 9841 and the chronic enrollment procedure of 42 U.S.C. § 9836a(h).  HHS will not repeat those arguments here.

In an attempt to deal with the fact that the term "reduce" in 42 U.S.C. § 9836a(h)(5) is accompanied by the terms "recapture" and "withhold", Plaintiff wades into statutory interpretation again.  But its analysis is unconvincing as it ignores basic tenets of statutory construction.  Plaintiff's reading relies exclusively on titles to support its argument that when Congress wrote withhold, recapture, and reduce, it only meant reduce. Pl. Opp. at 8.  Headings are not dispositive. "[H]eadings and titles are not meant to take the place of the detailed provisions of the text." *Brotherhood of R.R. Trainmen v. Baltimore & O.R. Co.*, 331 U.S. 519, 528-29 (1947).  Plaintiff's argument also runs counter to the cannon against superfluity.  When interpreting a statute, one must give effect to all provisions to avoid making any term inoperative, superfluous, void, or insignificant. *E.g.*, *Hibbs v. Winn*, 542 U.S. 88, 101 (2004); *see also Bailey v. United States*, 516 U.S. 137, 146 (1995) (noting "[w]e assume that Congress used two terms because it intended each term to have a particular, nonsuperfluous meaning."). Plaintiff does not explain why three terms are used if they all mean reduce.

Plaintiff counters the Government's argument that there is nothing to appeal in this case with the assertion that there is always something to appeal.  But then it fails to identify, as it has throughout this  litigation, what that something could be. Plaintiff quotes cases that promote administrative appeals as a way to correct initial errors and to avoid having to go to federal court. But Plaintiff does not and cannot point to any possible errors here.  HHS cannot even conceive of what federal case the Navajo Nation could make out on the underlying substantive issues where the Navajo Nation itself provided the data and Congress mandated the formula that led to HHS' action.  This is straightforward – it is just math.  And the math is right.  The only room for consideration here has been left completely in the Secretary's discretion.  He can decide whether conditions, such as a highly mobile population or an expectation that shortfalls are temporary,

exist. 42 U.S.C. § 9836a(h)(5)(B).  But Plaintiff has backed away, as it must, from its original

position that such discretion is appealable.  As HHS has argued here and both the Departmental

Appeals Board ("DAB") and courts have recognized, the DAB cannot substitute its judgment for

the Secretary's discretion. Def. Mem. in Support of Motion To Dismiss at 18-19; *see Golden

Living Center-Frankfort v. Secretary of Health and Human Servs.*, 656 F.3d 421, 426 (6th Cir.

2011) (noting the DAB used the proper standard of review when it did not substitute its own

evaluation).

     E.  <u>Plaintiff clarifies the relief it seeks is inappropriate</u>.

     Plaintiff closes its Opposition by asking this Court to intrude deeply into the realm

reserved to agency authority.  Plaintiff clarifies that it is asking this Court to require HHS to

engage in rulemaking, and it even suggests that the Court should dictate the results of that

rulemaking.  Yet Plaintiff points to no provision of the Head Start Act that says all procedures

promulgated under 42 U.S.C. § 9841 must be the same.  It can make no argument that the Head

Start Act requires HHS to promulgate procedures through rulemaking.  Although HHS does not

suggest that it would institute *ad hoc* procedures, Plaintiff suggests nothing short of rulemaking

would be sufficient and therefore are somehow *ad hoc*.  Interestingly, courts have not been

disturbed by *ad hoc* procedures when it comes to the appeal provisions governing the Head Start

program in the past.  In what would be understood as a partial termination today, the federal

agency running the Head Start program at the time reduced the service area of a grantee running

an umbrella agency in Long Island and awarded the area to a former subgrantee because the

grantee violated Head Start program requirements. *Economic Opportunity Commission of

Nassau County, Inc. v. Weinberger*, 524 F.2d 393, 397 (2d Cir. 1975).  The court held that the

required notice and hearing procedures governing termination and denial of refunding did not

apply because regulatory definitions did not cover the action at issue, but even if they did the *ad hoc* procedures given instead were sufficient because the grantee was treated fairly under the process it did receive and there was no showing of injury or substantial prejudice. *Id.* at 399-400.

Although Plaintiff acknowledges that it should be the agency that decides how to remedy a violation of law if the Court can identify one, Plaintiff goes on to suggest the Court should take the unusual step of retaining jurisdiction.  Plaintiff equates HHS' proper application of basic math concepts here with the situation in *Cobell v. Norton*, 240 F.3d 1081, 1109 (D.C. Cir. 2001), where the Department of Interior was found by the court to have breached its fiduciary duty by mismanaging individual Indian trust accounts for decades, or presumably by the circumstances that led federal courts to issue busing orders in the segregated South. Critically, when Plaintiff identifies the reason the Court should exercise such extraordinary power, it is "to ensure that whatever appeal rights the Agency affords … satisfy the mandate of Section 646(a)(3) of the Head Start Act." The appeal provisions of that section require the Secretary simply to give an appeal. At this point, Plaintiff appears not only to be asking this Court to declare what reduce means in the Head Start Act but what appeal means as well. That suggestion goes too far. Plaintiff is now simply asking the Court to substitute its judgment for that of the agency.

Plaintiff's final argument makes clear it hopes this Court can force HHS to fund the Navajo Nation for as long as possible at a bloated rate, so that it can collect more money than Plaintiff agreed to spend per child in its grant application and agreement.  Not only does this disturb the proper role of the courts and agencies, it means that critical funds that continue to go unspent by the Navajo Nation cannot be redistributed to serve other eligible Indian children in direct contradiction to the process set up by Congress.  If a three year old does not receive

services this year so a grantee can temporarily plump up its bottom line, there is no going back, that money and that potential is wasted forever.

At best, the proper remedy, should the Court conclude that to "reduce" funding an appeal is necessary, the Court should permit the agency to do explicitly what it has done implicitly: "withhold" or "recapture" the funds by the amount called for in the 2007 Reauthorization. Defendant, of course, believes that its actions to date have effectuated this result, but if the Court were to conclude that "reduc[ing]" grant funds under the 2007 Reauthorization and duly promulgated agency regulations has not taken place, because the Agency used the term "reduce", it should be permitted, as the statute provides, to "recapture" and/or "withdraw" those same funds.

Finally, if the Court were to conclude that any withdrawal or recapture of funds amounts to a reduction that requires an Appeal procedure beyond the planning and technical assistance as well as the discretionary review process required in the 2007 Reauthorization, then the Agency should be allowed to withdraw or recapture those funds until an appeal has concluded, rather than await a formal rulemaking.  If the Agency were to interpret its regulations in this manner (to

allow an appeal, if the Court concludes one is required), then there would be no basis to delay the

repurposing of the Head Start funds to await some more formal amendment to the regulations.

March 22, 2018

Respectfully submitted,

JESSIE K. LIU, DC Bar #472845
United States Attorney

DANIEL F. VAN HORN, DC Bar #924092
Chief, Civil Division

By:_____/s/
W. MARK NEBEKER, DC Bar #396739
Assistant United States Attorney
555 4th Street, N.W.
Washington, DC  20530
(202) 252-2536
mark.nebeker@usdoj.gov

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that service of the Defendant's Reply To Plaintiff's Opposition To

Defendant's Motion To Dismiss Or, In The Alternative, For Summary Judgment has been made

through the Court's electronic transmission facilities on the 22nd day of March, 2018.


_____ /s/
W. MARK NEBEKER, DC Bar #396739
Assistant United States Attorney
555 4th Street, N.W.
Washington, DC  20530
(202) 252-2536
mark.nebeker@usdoj.gov